In the Matter of EDWARD P. GRACE et al., Petitioners, against LEWIS A. WILSON, as Acting Commissioner of Education of the State of New York, Respondent.

Supreme Court, Special Term, Oneida County, September 28, 1950.

*Frank G. Pratt* for petitioners.

*Charles A. Brind, Jr.* and *Elizabeth M. Eastman* for respondent.

BASTOW, J. This proceeding was instituted to require the Commissioner of Education to call a meeting of the voters of Common School District No. 1 of the Town of Marcy, Oneida County to approve or disapprove an order of the commissioner dated May 15, 1950, dissolving that district and annexing the territory included therein to Central School District No. 2 of the towns of Whitestown, Marcy, Deerfield and Trenton, Oneida County.

It appears from the return of the respondent that this order was made after the receipt by the commissioner on April 26, 1950, of a petition signed by 183 of the 302 legally qualified voters in the district requesting such dissolution and annexation and the recommendation of the district superintendent of schools of the first supervisory district of Oneida County that such action be taken.

At about the same time the commissioner received a photostatic copy of a petition in opposition to such dissolution and annexation signed during the month of April, 1950, by some 155 persons described in the petition as taxpayers or parents of children residing within thé district. Subsequently and in the same month twenty-four persons executed individual writings in which each requested removal of his or her name from any petition except the one signed requesting dissolution and annexation.

The return further shows that on May 1, 1950, the commissioner received a certified copy of the minutes of a special meeting of the board of education of the central district showing the unanimous adoption on April 27, 1950, of a resolution agreeing to accept the common school district as part of the central district.

It was with this documentary evidence before him that the commissioner made the described order of May 15, 1950.

Exhibit 5 of the return is the certificate of Elwin S. Shoemaker, district superintendent, that on May 17, 1950, he filed a copy of the order with the clerk of the Town of Marcy, the clerk of the board of education of the central district and the president of the board of trustees of the common school district; that on May 18, 1950, he filed a copy of the order with the clerks of the Towns of Whitestown, Deerfield and Trenton, respectively, the clerk of the board of trustees of the common school district and D. Everett Bliss, district superintendent of schools.

On August 24, 1950, the petitioner, Grace, one of the trustees of the common school district, filed with the commissioner his affidavit and petitions purporting to be signed by over 170 qualified voters of the common school district requesting the commissioner to call a special meeting of the voters of the district to approve or disapprove of the order of annexation.

The commissioner refused to call such a meeting upon the ground that the order was duly made and entered in accordance with section 1801 of the Education Law and thereafter was duly filed as required by section 1802 of the same law and became final on July 18, 1950, no permissive referendum having been requested during the period of sixty days, as provided in the latter section.

It is the contention of the petitioners that the order did not become final until sixty days after June 28, 1950, which was the date when the first meeting of the trustees of the common school district was held after the annexation order was made. It is their further contention that the order did not become final because no copy thereof was served upon the petitioner, Grace, one of the trustees, and copies of the order were not posted as he claims was required by section 1801 of the Education Law.

It is conceded that by the provisions of article 37 of the Education Law the commissioner was empowered to make the order of dissolution and annexation. The narrow issue presented for determination is whether the intervening procedural steps as provided in the article were complied with so that the

order became final and the commissioner properly refused to call the permissive referendum requested by the requisite number of voters of the district. The case is one of first impression and the research of respective counsel and the court has failed to disclose any prior decision of the commissioner or the courts passing upon the point involved.

The answer to the problem is to be found by an interpretation of the provisions of sections 1801 and 1802 of the Education Law.

Section 1801 is entitled " Formation and changes of central school districts " and is divided into four subdivisions. The first and fourth pertain to the laying out of central school districts and do not touch upon the problem presented. The second and third read as follows:

" 2. The commissioner is authorized and empowered to make and enter in his office orders laying out territory in new central school districts or annexing to existing central school districts territory not contained within a city school district in a city having a population of more than ten thousand inhabitants, and not contained within a city school district having a full valuation of taxable real estate per public school pupil residing in the district of more than fifteen thousand dollars. The commissioner in laying out such central school districts and in fixing and defining the boundaries thereof shall include only territory of suitable size conveniently located for the attendance of pupils and having a sufficient number of pupils for the establishment of a central school. The commissioner shall designate all central school districts by name, number and such other description as he shall deem proper.

" 3. Within ten days after the making and entry of the order pursuant to this section, the commissioner shall transmit a certified copy thereof to the clerk, or in the event there is no clerk, to the trustee or trustees of each school district the territory of which is affected by said order. The clerk, the trustee or trustees, as the case may be, shall, within five days after receipt of such order, post a copy thereof in five conspicuous places in such district."

Section 1802 is entitled " Organization procedure " and is divided into two subdivisions. The first expressly states that " new central districts shall be organized as provided in this subdivision." Subdivision 2 states that " Territory shall be annexed to a central school district as provided in this subdivision." Paragraph a of this subdivision provides as follows:

" a. When an order annexing territory to a central school district has been made and entered as provided in section eighteen hundred one of this chapter, the commissioner shall within ten days thereafter cause certified copies of said order to be filed with the clerk of the central school district and the trustee or trustees of each school district affected thereby. Said order annexing territory to the central school district shall become final sixty days after such filing of the certified copy thereof, unless a permissive referendum is requested as hereinafter provided."

Paragraph b of this same section outlines the procedure for the permissive referendum upon the filing of a petition with the required signatures " within sixty days after the last filing of the copies of the aforesaid order ".

As early as 1914 the commissioner was authorized to lay out districts for the establishment of central schools (Education Law, former section 180, added by L. 1914, ch. 55). In 1944 sections 180 and 181 (now §§ 1801 and 1802) were amended and with revisions not material here have continued in their present form. (L. 1944, ch. 637.) The sections were renumbered by the general revision of the law in 1947. (L. 1947, ch. 820.)

At first reading there might appear to be some conflict between subdivision 3 of section 1801 and paragraph a of subdivision 2 of section 1802 insofar as the requirements for transmitting or filing and posting an order of annexation. A study, however, of the basic difference between the power of the commissioner to lay out a central school district and his power to annex territory to an existing central district clears up any confusion.

Following the making of an order laying out a central school district for the establishment of a central school as provided in section 1801, the burden is then passed by the provisions of subdivision 1 of section 1802 to the qualified voters to present to the commissioner a petition for the establishment of a central school. Thereafter, the commissioner may call a meeting of the voters to determine if such central district shall be formed. Presumably, if the voters take no action and present no petition the order has no force and effect.

If the commissioner, however, makes an order under section 1801 annexing territory to an existing central district, such order becomes final sixty days after the filing thereof as provided in paragraph a of subdivision 2 of section 1802, unless a permissive referendum is requested by the voters.

In the light of the foregoing it seems clear that it was the intention of the Legislature that subdivision 3 of section 1801 should provide for the method of notification of the making of an order laying out a central district and paragraph a of subdivision 2 of section 1802 for the method of notification where territory is annexed to an existing central district.

This conclusion is fortified by the provisions of each subdivision. Thus in section 1801 it is required that the order be transmitted to the clerk, or in the event there is no clerk, to the trustee or trustees of each school district affected by the order. No provision is made for sending copies to a central district because none is in existence — it is being laid out. There follows the provision for posting copies of the order by the clerk or trustees.

On the other hand subdivision 2 of section 1802 specifically applies to annexation of territory to a central district. There it states in plain language that when an order annexing territory to a central district is made the commissioner shall cause certified copies to be filed — not transmitted — with the clerk of the central district and the trustee or trustees of each school district affected. Here there is no provision for posting copies of the order. The order becomes final sixty days after the filing. This fits into the pattern of the legislative act because the effective date of the order should not hinge upon an administrative act of posting by a local school official who might take such action promptly, eventually or never.

The order made by the commissioner in this proceeding should have been served in accordance with the provisions of paragraph a of subdivision 2 of section 1802.

The petitioners contend that service thereunder was defective because no copy of the order was served upon the petitioner, Grace, who was one of the trustees. The section, of course, only requires filing — not serving — certified copies " with the clerk of the central school district and the trustee or trustees of each school district affected thereby."

The expression " trustee or trustees " was apparently used in view of the provision of section 1602 of the Education Law that a common school district may have one or three trustees as decided by the electors at any annual meeting. There being three trustees in this district the statute required filing with the trustees of the district.

The trustees of this common school district constituted a board for such district and such board is a body corporate

(Education Law, § 1601.) An examination of other provisions of the Education Law discloses an intent that where the Legislature makes reference to the trustees of a common school district it is speaking of the corporate body, that is, the board of trustees. (See Education Law, §§ 1511, 1601–1617.)

Similarly, boards of education of union free school districts and each city school district are constituted bodies corporate. (Education Law, §§ 1701, 2502.) Such boards are so referred to throughout the law whereas trustees of a common school district, who constitute a board and body corporate, are referred to throughout the law as " trustee or trustees ".

It is suggested by counsel for the respondent that the term " board of trustees " is seldom used with reference to common school districts to avoid confusion with " board of education ".

In any event a reading of the provisions of articles 33 and 37 clearly shows that where the expression " trustee " or " trustees " is used in connection with a common school district reference is made to the corporate body, the board of trustees.

If this conclusion is correct it follows that the filing of the order with the president of the board of trustees of the district was a valid and legal compliance with the requirements of section 1802.

The certificate of the district superintendent shows that the requirements of the statute were exceeded by also filing copies of the order with the clerk of the school district and the clerks of four towns.

The claim of the petitioners that the filing with the board of trustees did not take place until June 28, 1950, which was the first meeting of the board after the date of the order, is impossible to sustain.

In *Sweeney* v. *City of New York* (225 N. Y. 271, 275), it was said: " The verb ' to file ' may be used in various senses. When as in this statute it is said that a paper must be filed with an officer the requirement is at least complied with when the party delivers that paper to the officer at his official place of business and there leaves it with him." (See, also, *Matter of Keough* [*Amter*], 179 Misc. 1.)

The statutory provision directing filing of the order did not require, as contended by petitioners, service of a copy thereof upon the petitioner, Grace, a trustee of the district.

In *Albany Builders' Supply Co.* v. *Eastern Bridge & Structural Co.* (235 N. Y. 432, 437–438), the court said: " ' To file ' is not to be construed as synonymous with ' to serve '. One does not file a paper by handing it to another who is walking on the street. ' A document may be said to be filed with an officer when it is placed in his official custody, and deposited in the place where his official records and papers are usually kept ' (*Reed* v. *Inhabitants of Acton,* 120 Mass. 130, 131)."

The petitioners set forth in their petition that notice of the making of the order was not generally received by the greater portion of the voters of the district until about a week after the sixty days had passed and the order had become final. This is denied, upon information and belief, by the respondent. It is unfortunate, to say the least, if the voters in this district were deprived of their right to a permissive referendum by a failure to disseminate throughout the district the fact that such an order had been made.

The remedy, if one is needed, must come from the Legislature. In this proceeding the court is called upon to determine if the provisions of the statute were complied with by the commissioner.

The conclusion is reached and it is found that the order of the commissioner became final on July 18, 1950. The petition for a permissive referendum was not filed until August 24, 1950. The commissioner properly refused to call the meeting because he was without jurisdiction so to do.

The petition is denied and the proceeding dismissed, without costs.

Submit order accordingly.